

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

AB:RJN  *271 Cadman Plaza East*
F.#2008V01243  *Brooklyn, New York  11201*

July 22, 2010

**By Hand & ECF**

The Honorable David G. Trager
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:  Mayer Vaknin v. United States
           Civil Docket No. 08-2420 (DGT)

Dear Judge Trager:

      The government respectfully submits this letter in opposition to Mayer Vaknin's June 1, 2010 application for bail pending resolution of his habeas petition.  Vaknin fails to demonstrate that his habeas petition raises substantial claims or that extraordinary circumstances exist.  Therefore, the government respectfully submits that his application for bail should be denied.

      For a detailed discussion of the facts and the issues in this case, the government respectfully refers the Court to its Memorandum of Law in Opposition to Petition to Vacate Conviction and Sentence, dated September 8, 2008 ("Gov. Br."), the government's letter dated February 17, 2009, submitted in response to Vaknin's post-hearing brief ("Gov. Letr."), and the affidavits of Assistant United States Attorney Jeffrey Rabkin, dated August 28, 2009 and September 28, 2009.

Background

      To summarize, in July 2006, Vaknin pled guilty to and was convicted of conspiring to commit wire and mail fraud in violation of 18 U.S.C. § 1349 and of aggravated identity theft in violation of 18 U.S.C. § 1028(A)(a)(1) and 1028(A)(b).  The charges were part of a twenty-five count indictment and relate to three schemes which Vaknin and his employees used to fraudulently

obtain commissions, bonus payments, and telephone handsets from T-Mobile U.S.A., Inc. ("T-Mobile"), a national wireless service provider, between January 2004 and January 2006. The wire fraud charges cover two basic schemes. First, Vaknin and his employees activated new T-Mobile accounts and additional lines of service to existing T-Mobile accounts without customers' permission in order to qualify for Special Incentive Fund payments from T-Mobile. Second Vaknin and his employees renewed customers' service contracts without their permission in order to qualify for commission payments from T-Mobile. The mail fraud charges cover a third scheme. Vaknin and his employees sold T-Mobile customers' personal identifying information to third parties who then ordered cellular phones ("handset upgrades") using the customers' accounts (the "Fraudulent Handset Scheme"). In many cases, the phones were sold back to Vaknin's store, Cell Island, to be re-sold to the general public. The indictment includes eleven counts of aggravated identity theft. Ten of those counts relate to the first two fraudulent schemes. One count relates to the third scheme, the Fraudulent Handset Scheme.

In his habeas petition, Vaknin essentially argues that he is not guilty of the Fraudulent Handset Scheme, and pled guilty only due to ineffective assistance of counsel and an alleged Brady violation. As fully set forth in the government's prior submissions and as summarized below, these arguments have no merit.

II.  Legal Standard for Bail Pending Habeas Corpus Determination

The district court should not exercise its authority to grant bail pending the determination of a petition for habeas corpus except in "special cases." Mapp v. Reno, 241 F.3d 221, 226 (2d Cir. 2001). The petitioner must demonstrate that "the habeas petition raise[s] substantial claims and that extraordinary circumstances exist[ ] that make the grant of bail necessary to make the habeas remedy effective." Grune v. Coughlin, 913 F.2d 41, 44 (2d Cir. 1990) (quoting Iuteri v. Nardoza, 662 F.2d 159, 161 (2d Cir. 1981)). A substantial claim is one which has a high likelihood of success. Welch v. Artus, No. 04-CV-205S, 2007 WL 949652, at *60 (W.D.N.Y. March 29, 2007); Richard v. Abrams, 732 F.Supp. 24, 25 (S.D.N.Y. 1990) (holding that the merits of the petition must be substantially in the petitioner's favor); Rado v. Manson, 435 F.Supp. 349, 350-51 (D.Conn. 1977) (holding that a habeas petitioner must present substantial claims with a high probability of success). As discussed below, Vaknin has failed to demonstrate that his claims have a high likelihood of success and has failed to set forth any exceptional circumstances.

III. Bail Pending the Determination of Vaknin's Habeas Petition is Not Warranted

    A.    Likelihood of Success

For the reasons stated in the government's prior submissions, Vaknin's claims do not have a substantial likelihood of success. The government summarizes these arguments here.

There is no merit to Vaknin's ineffective assistance of counsel claim. The conduct of Harold Levy, Vaknin's lawyer at the time of his guilty plea, was entirely reasonable. Furthermore, any alleged deficiencies in his performance did not cause prejudice to Vaknin. Strickland v. Washington, 466 U.S. 668, 687-88, 696 (1984) (requiring the petitioner to prove that counsel's conduct was objectively unreasonable and that prejudice resulted). Operating under time constraints imposed by Vaknin's decision to fire his previous lawyers, Levy met with Vaknin several times and accurately explained Vaknin's options to him. Levy never promised Vaknin any particular sentence, and Vaknin acknowledged at the time of his guilty plea that he understood the ultimate sentencing determination rested with the Court. Vaknin has also failed to demonstrate that, absent the purported errors of his counsel, he would have chosen to proceed to trial rather than pleading guilty. Even assuming Vaknin had successfully challenged the government's loss figures with respect to the Fraudulent Handset Scheme, Vaknin would have faced a sentencing guideline range higher than the seven-year sentence ultimately imposed. Had he gone to trial, Vaknin faced a full twenty-five count indictment, including eleven counts of aggravated identity theft. If convicted of all the charges, he faces, based on the identity theft charges alone, a mandatory sentence of twenty-two years, a sentence far higher than the one he ultimately received.

Vaknin's Brady claim likewise has no merit. First, Vaknin had access to the information he claims the government failed to disclose. Vaknin acknowledges that in May 2006, prior to his guilty plea, he was aware that Patrick Rodriguez, Kinda George and others were selling customer information without his knowledge. This is the very information he asserts the government failed to disclose. Because he was on notice of this information, the government had no disclosure obligation. See Gov. Letr. dated 2.17.09 for a complete discussion of the facts and case law relating to this issue.

Regardless, the material to which Vaknin refers is not exculpatory and, therefore, does not constitute Brady material. In short, the possibility that Vaknin's co-conspirators may have engaged in independent acts for their own benefit does not in any way absolve Vaknin of his role in the overall conspiracy. See Gov. Br. dated 9.8.08 at 22-24.

This is abundantly clear from the notes of the December 21, 2005 proffer session with Jenille St. Rose, which Vaknin erroneously claimed contain exculpatory information. To make this claim, Vaknin has taken one small portion of the proffer notes completely out of context. Jenille Rose explained the following in relation to the Fraudulent Handset Scheme:

> Mike [Vaknin] would sell 'Hushers' or street guys customer information for approximately $50 per, so that could use that information to call T-Mobile and change billing address. After changing the billing address, 'Hushers' would order handsets to the new address. They would intercept these handsets and sell them back to Mike. Mike would either sell them in his Cellular Island store or 'wholesale' them to other stores. When selling the stolen phones out of his stores, Mike would instruct his workers to change the last four digit of the IMEI number in the I-Cam system (T-Mobile Customer System). He would also instruct his workers to replace the IMEI sticker on the phone with a new sticker. Mike was using the customer information on a CD he bought from an owner whose cell phone store had gone out of business.
>
> She then stated:
> Patrick Rodriguez and Yousef Murden, unknown to Mike, were paying Kinda George. . . .to access the I-Cam system and get information. They would then take the customer information and sell it to the 'Hushers,' who would proceed with the handset scheme described above.

Vaknin has pointed to the statement, "Patrick Rodriguez and Yousef Murden, unknown to Mike, were paying Kinda George . . . .to access the I-Cam system and get information," to support his Brady claim. He completely ignores the context in

which that statement was made which directly implicates him in the Fraudulent Handset Scheme.

Finally, Vaknin has failed to demonstrate that, but for the alleged failure to disclose this material, Vaknin would have chosen to proceed to trial.  First, the guideline range for the conduct for which Vaknin continues to accept responsibility is higher than the sentence he ultimately received.  Second, this alleged Brady material relates solely to the fraudulent handset scheme.  Vaknin faces ten aggravated identity theft counts relating to the other two fraudulent schemes alleged in the indictment, schemes for which Vaknin continues to accept responsibility.  Third, Vaknin's decision to forgo a Fatico hearing relating to the Fraudulent Handset Scheme, at which point all the material he claims to constitute Brady was already provided, undermines any possible claim that he suffered prejudice.

For these reasons, Vaknin has failed to demonstrate a substantial claim with a high likelihood of success.  He therefore does not meet the first prong of the standard for bail pending resolution of his habeas petition.

B.   Vaknin Has Not Set Forth Exceptional Circumstances

Vaknin's argument for exceptional circumstances is premised on a completely inaccurate calculation of the applicable United States Sentencing Guidelines.  Vaknin argues that his proper sentence is 21 to 27 months' imprisonment and that he has already served over 27 months.

As the government has explained in its previous submissions, Vaknin's calculation is simply wrong.  As set forth below, even assuming that Vaknin was convicted only of the conduct to which he now admits,[1] his Guidelines range would have been substantially more than he estimates in his letter and also higher than the sentence he actually received.  At a minimum, based on only the criminal acts he now admits, his Guidelines range would have been 87 to 108 months.  A detailed explanation and calculation of the applicable enhancements under the United States Sentencing Guidelines is set forth in Gov. Letr. dated 2.17.09 at 5-8.

---

[1]   The government does not concede that these admissions represent the full extent of Vaknin's conduct.

To support his argument that the proper guideline range is 21 to 27 months, Vaknin argues that this was the guideline range agreed to by the government for Vaknin's co-defendant, Patrick Rodriguez. This is irrelevant. First, Rodriguez was a cooperating witness, and therefore, his situation is entirely different from Vaknin's situation. Second, Rodriguez, unlike the defendant who was an organizer of the fraud, was entitled to a reduction in his offense level based on his role in the offense. Third, Rodriguez was not subject to certain enhancements, such as obstruction of justice, that apply to Vaknin.

Finally, Vaknin's comparison to Rodriguez demonstrates that he misunderstands the proper standard that applies to the determination of his habeas claims. In each of his submissions, Vaknin continues to assume that, should the Court grant his petition for habeas relief, the government would be required to enter another plea agreement or sentencing stipulation with a lower guidelines range. That of course, is not the case because the government would be entitled to proceed to trial. Should the Court grant Vaknin's petition, Vaknin would be facing the same charges that he faced prior to his guilty plea, which carry a range of imprisonment far higher than the calculation set forth above. Importantly, he would face eleven counts of identity theft, carrying a total mandatory period of imprisonment of twenty-two years. As previously explained, only one of those counts relates to the Fraudulent Handset Scheme. The other ten relate to other schemes for which Vaknin admits his involvement.

Vaknin has served only 36 months of an 84 month sentence. His erroneous calculation of the guideline range that he hopes he could achieve through further plea negotiations simply does not set forth exceptional circumstances supporting his release pending the determination of his habeas petition.[2]

---

[2]  Moreover, the possibility that Vaknin could face a lower sentencing guidelines range if his habeas petition is granted does not amount to exceptional circumstances. The Second Circuit has expressly held that such a claim is not sufficient to constitute extraordinary circumstances:

> [The defendant] contends further that his case is extraordinary because, if the habeas writ is granted, it will mean that his incarceration after July 2, 1981, would have been without basis. However, there is nothing unusual about this. Virtually all habeas corpus

6

IV.  Conclusion

        For the reasons stated above, the government respectfully submits that the defendant's application for bail pending the resolution of his habeas petition should be denied.

                                    Respectfully submitted,

                                    LORETTA E. LYNCH
                                    United States Attorney

                      By:       S/
                            Rachel J. Nash
                            Assistant U.S. Attorney
                            (718) 254-6072

cc:  Clerk of Court (by ECF)
     Inga Parsons (by ECF)

---

petitioners argue that their confinement is unlawful. Iuteri v. Nardoza, 662 F.2d at 162.